UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| BRIAN P. LEAVITT et al., )<br>)<br>      *Plaintiffs* )<br>v. )<br>)<br>SONOCO HEALTH AND GROUP )<br>BENEFITS PLAN et al., )<br>)<br>      *Defendants* ) | No. 1:20-cv-00426-LEW |

***MEMORANDUM DECISION AND ORDER ON PLAINTIFFS'
MOTION FOR DISCOVERY AND TO RESERVE RIGHTS
TO MOVE TO MODIFY RECORD, SEEK JURY TRIAL***

Plaintiffs Brian P. Leavitt and Amanda L. Riendeau, who have sued to recover life insurance benefits pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461, move for limited discovery and to reserve their rights to move to modify the administrative record and request a jury trial "on any issues of fact that remain in contention after discovery is completed." Plaintiffs' Objection to Scheduling Order[,] Motion to Conduct Discovery[,] Motion to Modify the Administrative Record[,] and Request for Jury Trial ("Motion") (ECF No. 25) at 7; Plaintiffs' First Amended Complaint (FAC) (ECF No. 15) ¶¶ 53-61. The three defendants, Sonoco Health and Group Benefits Plan (the "Plan"), Sonoco Products Company ("Sonoco"), and Metropolitan Life Insurance Company ("MetLife"), oppose the Motion in its entirety. *See* Defendant [MetLife's] Objection to [Motion] ("MetLife Objection") (ECF No. 30) at 1-2; [Sonoco] Defendants['] . . . Reply to [Motion] ("Sonoco Objection") (ECF No. 31) at 2-3.

For the reasons that follow, I (i) grant the Motion in part insofar as the plaintiffs request limited discovery but direct that, no later than December 6, 2021, the parties meet and confer in

1

good faith pursuant to Local Rule 26(b) to attempt to resolve disputes concerning the plaintiffs' specific proposed discovery requests and, no later than December 13, 2021, file on the CM/ECF docket a joint status update or separate updates advising whether any disputes remain and, if so, identifying them and briefly describing the parties' positions regarding them, and (ii) otherwise moot the Motion as unnecessary insofar as the plaintiffs seek to reserve their rights to modify the administrative record and request a jury trial.  I further direct that, following the filing of the parties' joint or separate status update(s), the Clerk's Office schedule a teleconference with the parties to resolve any remaining discovery disputes and establish remaining deadlines.

## I.  Applicable Legal Standard

"Discovery is the exception, rather than the rule, in an appeal of a plan administrator's denial of ERISA benefits."  *Grady v. Hartford Life & Accident Ins. Co.*, Civil No. 08-339-P-H, 2009 WL 700875, at *1 (D. Me. Mar. 12, 2009).  "[W]hen it comes to discovery in a case involving review of an ERISA benefits determination, the law in this circuit is set by *Liston* [*v. Unum Corp. Officer Severance Plan,* 330 F.3d 19 (1st Cir. 2003)], pursuant to which [the party seeking discovery] must offer at least some very good reason to overcome the strong presumption that the record on review is limited to the record before the administrator."  *Id.* (citations and internal punctuation omitted).

"Because full-blown discovery would reconfigure th[e] record and distort judicial review, courts have permitted only modest, specifically targeted discovery in such cases."  *Denmark v. Liberty Life Assurance Co. of Boston,* 566 F.3d 1, 10 (1st Cir. 2009).  Such discovery may be relevant and appropriate, for example, "[w]here the challenge is not to the merits of the decision to deny benefits, but to the procedure used to reach the decision," or "to explain a key item, such as the duties of the claimant's position, if that was omitted from the administrative record."

*Orndorf v. Paul Revere Life Ins. Co.*, 404 F.3d 510, 520 (1st Cir. 2005). Targeted discovery is also appropriate to shed light on the meaning of ambiguous language in a benefit plan. *See, e.g., Martinez v. Sun Life Assurance Co. of Can.*, 948 F.3d 62, 69 n.3 (1st Cir. 2020) (rejecting plaintiff's argument that district court abused its discretion in denying discovery when contract term was unambiguous; distinguishing case cited by plaintiff, *Taylor v. Cont'l Grp. Change in Control Severance Pay Plan*, 933 F.2d 1227 (3d Cir. 1991), on basis that, "after finding that a term in an ERISA-governed severance plan was ambiguous, [the *Taylor* court] remanded the case, instructing the district court to consider interpretive statements, past practices, and other evidence bearing on the parties' understanding of the relevant term").

## II. Factual Background

The plaintiffs are the son and daughter of the late Brian M. Leavitt ("Brian M."), FAC ¶¶ 2-3, who, prior to his death on January 29, 2016, was employed by Sonoco, a provider of consumer packaging, industrial products, and packaging supply chain services with a facility in Pittsfield, Maine, *id*. ¶¶ 9-10, 15.[1] On December 16, 2014, Brian M. was forced to cease working full-time at Sonoco due to a workplace injury. *Id*. ¶ 11. On May 18, 2015, he applied for and was granted short-term disability (STD) benefits pursuant to his Disability Benefits plan with Sonoco. *Id*. ¶ 12. On June 14, 2015, he applied for long-term disability (LTD) benefits pursuant to that plan. *Id*. ¶ 13.

Prior to his death, Brian M. completed an enrollment form for life insurance benefits under the Plan entitling him to a death benefit equivalent to his annual salary. *Id*. ¶¶ 21-22. He also elected supplemental life insurance benefits, naming each of the plaintiffs a 50 percent primary

---

[1] For purposes of resolving the instant motion for discovery, I refer not only to the administrative record but also to certain allegations of the FAC. To the extent that the defendants deny those allegations, the question before me is whether the plaintiffs have demonstrated a need for discovery predicated on their theory of the case.

beneficiary for purposes of both basic and supplemental life insurance. *Id*. ¶¶ 22-25. Basic life insurance is "[n]oncontributory," meaning that Sonoco fully funds the premium for such coverage on behalf of participants. Administrative Record (AR) (ECF Nos. 22, 22-1) at Page ID ## 201, 251. Supplemental life insurance is "[c]ontributory," meaning that the participant funds all or part of the premium for such coverage, if elected. *Id*. at Page ID ## 201, 232.

In a section titled "Eligibility for Continuation of Certain Insurance While You Are Totally Disabled," the Plan provides that if a participant supplies proof that he or she has become "Totally Disabled" as defined therein, the participant "may qualify to continue certain insurance under this section[,]" and, if the insurance is "continued, premium payment will not be required." *Id*. at Page ID # 225.

In a section titled "Continuation of Insurance with Premium Payment," the Plan provides:

**AT THE POLICYHOLDER'S OPTION**

The Policyholder [Sonoco] has elected to continue insurance by paying premiums for employees who cease Active Work in an eligible class for any of the reasons specified below.

1. if You cease Active Work due to injury or sickness, for a period in accordance with the Policyholder's general practice for an employee in Your job class;

2. if You cease Active Work due to a layoff, for a period in accordance with the Policyholder's general practice for an employee in Your job class;

3. if You cease Active Work due to strike, for a period in accordance with the Policyholder's general practice for an employee in Your job class;

4. for the period You cease Active Work in an eligible class due to any other Policyholder approved leave of absence, for a period in accordance with the Policyholder's general practice for an employee in Your job class.

The Policyholder's general practice for employees in a job class determines which employees with the above types of absences are to be considered as still insured and for how long among persons in like situations.

*Id*. at Page ID ## 213-14.

Following Brian M.'s death, MetLife tendered $64,000 to the plaintiffs pursuant to the basic life insurance policy. FAC ¶ 28. However, by letter dated March 1, 2016, MetLife denied the plaintiffs' claim for benefits pursuant to the supplemental life insurance policy, citing Plan provisions pertaining to eligibility for continued coverage based on total disability and noting that Brian M. had submitted no proof of disability within 12 months after his leave from work began. AR at Page ID ## 261-63. Brian M. was never "totally disabled" as defined by the Plan prior to his death. FAC ¶ 31.

On April 27, 2016, the plaintiffs sent MetLife a written notice of their intent to appeal the denial with an accompanying request for documents. *Id*. ¶ 33. The plaintiffs also requested a copy of the Plan from Sonoco, which, on June 8, 2016, Sonoco refused to produce. *Id*. ¶¶ 35-36. The plaintiffs again requested the Plan from Sonoco and obtained a 30-day extension from MetLife to file an appeal. *Id*. ¶¶ 37-39. On September 9, 2016, the plaintiffs requested a second extension of time from MetLife predicated on their continuing inability to obtain a copy of the Plan from Sonoco. *Id*. ¶ 40. On September 22, 2016, MetLife denied a further extension of the appeal deadline. *Id*. ¶ 41. The plaintiffs' counsel received the Plan documents on December 12, 2016. *Id*. ¶ 42.

On February 14, 2018, the plaintiffs' counsel forwarded to MetLife a complaint, demand for payment, and additional medical and workers' compensation documents. *Id*. ¶ 43. By letter dated March 8, 2018, MetLife advised the plaintiffs' counsel that it was reviewing the matter. *Id*. ¶ 44. As part of its review, MetLife emailed outside counsel four questions its Claims department had posed to Sonoco, the fourth of which was, "If the employee was on Leave of Absence or out due to illness, what is the employer practice regarding life insurance for LOA or continuation and

would Supplemental life insurance coverage continue?" AR at Page ID ## 333-34.  With respect to the fourth question, outside counsel commented:

> Generally questions of eligibility (such as the question in Item 4) are set out under the terms of the life insurance policy.  By asking the question in Item 4, is MetLife saying that employers have the option of adopting their own rules of eligibility?  The certificate for Sonoco under the LOA section states "Employer Practices".  This generally means the employer did not have a definitive LOA outlined, as it could vary for that type of leave, and in those cases we use "Employer Practices".  For other customers it may specifically say 6 months as the time period.

*Id*. at Page ID # 332-33.

> On March 15, 2018, Sonoco emailed MetLife the following responses to its four questions:
>
> 1. We need Sonoco to confirm if premiums for Supplemental life ended for Mr. Leavitt, and if so what is the date they ended and why did they end?  *Mr. Leavitt paid for supplemental through his short-term disability period ending 6/30/2015.  We are not seeing any payments through direct-bill during his long-term disability period.  We mailed three monthly invoices starting in June, and after that we sent a cancellation letter on 8/31/2015.*
>
> 2. If deductions from the employee's paycheck stopped, did the employee move to direct bill?  *Refer to Question 1*.
>
> 3. Since the attorney is stating the employee did not meet the definition of "totally disabled" we will also need job status confirmed, since the claim was initially submitted as disabled job status.  *Mr. Leavitt was on an approved long-term disability.  Our understanding of the definition in the life certificate is that because he wasn't able to RTW [presumably, return to work] he would have been "disabled".*
>
> 4. If the employee was on Leave of Absence or out due to illness, what is the employer practice regarding life insurance for LOA or continuation and would Supplemental life insurance coverage continue?  *Yes, supplemental life would continue through a LOA including LTD.*

*Id*. at Page ID # 340 (emphasis added to distinguish answers from questions).  By email to MetLife dated March 29, 2018, Sonoco further elaborated:

> [Brian M.'s] premiums were deducted from his Short Term Disability checks through June 2015.  When he exhausted his STD then he transitioned to a Continue on Leave until his LTD was approved in July of 2015.  The short period of time

6

> that he was on Continue on Leave he received the attached direct bill invoice for the month of July.  He did not make payment for the month of July.

*Id*. at Page ID # 369.

The record contains copies of three notices addressed to Brian M. from CONEXIS, which described itself as having "been retained by [Sonoco] to provide billing services for you under their group benefit plan(s)." *Id*. at Page ID ## 353-57.  The first notice, dated August 17, 2015, reflected premiums due of $228.27 for each of the coverage periods of August 1 through August 31, 2015, and September 1, 2015, through September 30, 2015, totaling $456.54.  *Id*. at Page ID ## 353-54.  It listed Brian M.'s coverages as short-term disability, a vision plan, medical plan, and dental plan, and supplemental life insurance.  *Id*. at Page ID # 354.  The second notice, dated September 14, 2015, reflected a total due of $684.61, including $456.54 still due for the prior two coverage periods plus $228.27 for the same coverages for the period of October 1, 2015, through October 31, 2015.  *Id*. at Page ID ## 355-56.  The third notice, dated October 3, 2015, stated that Brian M.'s coverage under Sonoco's "group health plan" ended on July 31, 2015, because "[a] required premium payment was not sent at all."  *Id*. at Page ID # 357.

By letter dated November 14, 2018, MetLife informed the plaintiffs' counsel that the plaintiffs had failed to exhaust their administrative remedies in 2016 and that it declined to reopen their appeal but had reviewed counsel's letter "[a]s a courtesy[.]"  *Id*. at Page ID # 721.  It stated that, per its understanding, Brian M. had "paid and [Sonoco] submitted his share of premiums for the period through June 30, 2015 that encompassed in whole or part [his] period of short-term disability" but that "[n]o premiums for supplemental insurance coverage were paid for any period beyond June 30, 2015[.]"  *Id*. at Page ID # 722.  "Accordingly," it wrote, "pursuant to the terms of the Plan, effective June 30, 2015, [Brian M.'s] coverage ended."  *Id*.

7

By letter to MetLife dated December 11, 2018, the plaintiffs' counsel requested reconsideration of MetLife's "new denial" of the plaintiffs' claim, enclosing, *inter alia*, a Benefits Confirmation Statement dated November 5, 2015, from Sonoco to Brian M. listing his benefits election as including Employee Supplemental Life Insurance at four times his annual salary for a pre-tax pay-period deduction of $17.91. *Id*. at Page ID ## 726-32. MetLife notified the plaintiffs' counsel on both January 3 and January 7, 2019, that the plaintiffs had exhausted their administrative remedies under the Plan and that no further appeals would be considered. *Id*. at Page ID ## 750, 755.

### III. Discussion

The plaintiffs argue that it is critical to their case to be able to conduct discovery into whether Brian M. was in a class of employees with respect to whom Sonoco's general practice was to elect to continue insurance by paying premiums, *see* Motion at 6, asserting that "the language in the Plan itself creates ambiguity surrounding premium payments and continued coverage[,]" Plaintiffs' Consolidated Reply to Defendants' Oppositions . . . ("Reply") (ECF No. 34) at 2.  I agree.

The Plan provides several options for the "Continuation of Insurance with Premium Payment," including "At the Policyholder's Option."  AR at Page ID # 211-14.  In the "Policyholder's Option" subsection, the Plan states that "[t]he Policyholder" – Sonoco – "has elected to continue insurance by paying premiums for employees who cease Active Work in an eligible class for" certain reasons, including those who "cease Active Work due to injury or sickness, for a period in accordance with the Policyholder's general practice for an employee in Your job class[,]" and those who "cease Active Work in an eligible class due to any other Policyholder approved leave of absence, for a period in accordance with the Policyholder's general

8

practice for an employee in Your job class." *Id*. at Page ID # 213. Per the Plan, "[t]he Policyholder's general practice for employees in a job class determines which employees with the above types of absences are to be considered as still insured and for how long among persons in like situations." *Id*. at Page ID # 214.

That subsection begs key questions. First, does "paying premiums for employees" mean only the employer's share of those premiums or both the employee's and employer's share? Second, what are Sonoco's general practices with respect to the continuation of supplemental life insurance benefits for the job classes at issue?

With respect to the first question, the language on its face is ambiguous: it reasonably could be construed to mean that Sonoco would forward premiums to MetLife that include any required contribution by employees *or* that Sonoco would pay the full cost of such premiums in the special circumstances presented. With respect to the second question, the extrinsic evidence that MetLife obtained from Sonoco in an effort to ascertain its general practices likewise is ambiguous and fairly can be read to indicate that Brian M.'s supplemental life insurance should have continued. *See id.* at Page ID # 340 ("Yes, supplemental life would continue through a LOA including LTD.").

The defendants deny that there is any ambiguity to be resolved or evidentiary gap to be filled, asserting that Sonoco simply properly canceled Brian M.'s supplemental life insurance for lack of payment of the required premiums. *See* Sonoco Objection at 6-9; MetLife Objection at 16-19. They emphasize that:

1. Under the heading "Contributions to Premium," the Plan states, "If you enroll for Supplemental Life insurance . . . coverage, you are required to make contributions to premiums." AR at Page ID # 232; *see also id*. at Page ID # 201. By contrast, basic life insurance is a "[n]oncontributory," or entirely employer-paid, benefit. *Id*. at Page ID ## 201, 251.

9

2.      Consistent with the Contributions to Premium provision, the record reflects that, after Brian M. ceased active employment, he in fact made contributions to his supplemental life insurance premiums through withdrawals from his STD payments, but that, after his STD ended and he failed to pay premiums for which he was "direct-billed," his supplemental life insurance was canceled for nonpayment. *Id*. at Page ID ## 340, 353-57.

3.      The record further reflects that, rather than ignoring the Plan language on which the plaintiffs rely, Sonoco exercised its option pursuant to that provision to continue to pay the premium for Brian M.'s basic life insurance, to which Plan participants are not required to contribute. *See id*. at Page ID ## 201, 251.

4.      Pursuant to the Plan, the need for an employee to pay premiums to continue supplemental life insurance coverage is waived only if he or she submits proof acceptable to MetLife of "Total Disability," as that term is defined in the Plan, *id*. at Page ID ## 213, 225-26, which Brian M. admittedly never did.

These points are not dispositive in the defendants' favor. That the Plan generally defines supplemental life insurance to require employee contributions to premiums and provides an option for premium waiver by demonstrating "Total Disability" is not conclusive of the question whether, pursuant to the ambiguous Plan language at issue, Sonoco elected to continue supplemental life insurance for certain classes of employees no longer actively working by paying all required premiums. That Sonoco withheld supplemental life-insurance premiums from Brian M.'s STD benefits and arranged for him to be direct-billed afterward does not necessarily mean that it did so correctly in accordance with the terms of the Plan.

Targeted discovery, hence, is appropriate in this case with the proviso that I direct the parties to meet and confer to attempt to resolve disputes over the scope of the requested discovery,

as discussed in more detail below. The plaintiffs' remaining requests – to reserve their rights to modify the administrative record and seek a jury trial, *see* Motion at 7 – are mooted as unnecessary. The Scheduling Order contemplates that, if discovery is permitted, the court will determine whether the administrative record is to be modified with information thereby obtained, *see* ECF No. 21 at Page ID # 167, and the plaintiffs reserved their right to request a jury trial by including a jury trial demand on the first page of their operative complaint, *see* FAC at 1.[2]

The plaintiffs propose to submit seven interrogatories and six requests for production of documents (RPDs) to MetLife and eight interrogatories and five RPDs to Sonoco. *See* ECF No. 25-1, attached to Motion. However, because Sonoco objects that the proposed discovery is overbroad and unduly burdensome, *see* Sonoco Objection at 2-3, 9-10, & nn. 4-5, and MetLife objects that any discovery designed to ascertain whether Sonoco is required to pay a participant's premium for contributory supplemental life insurance coverage in certain circumstances should not be directed to MetLife, *see* MetLife Objection at 18 n.12, I direct that, no later than December 6, 2021, the parties meet and confer in good-faith pursuant to Local Rule 26(b) to attempt to resolve their disputes over the proposed discovery and, no later than December 13, 2021, file on the CM/ECF docket a joint status update or separate updates advising whether any disputes remain and, if so, identifying those disputes and briefly describing the parties' positions on them. I further direct that, following the filing of the parties' joint or separate status update(s), the Clerk's Office schedule a teleconference with the parties to resolve any remaining discovery disputes and establish remaining deadlines, including for the completion of discovery, the filing of any motion

---

[2] For that reason, MetLife's objection that the plaintiffs' request for a jury trial is untimely, *see* MetLife Objection at 2, 19, is overruled.

to modify the administrative record, amend the complaint, or request a jury trial,[3] and the filing of motions for judgment on the record.

## IV. Conclusion

For the foregoing reasons, I **GRANT** the Motion in part, insofar as the plaintiffs request limited discovery, and otherwise **MOOT** it as unnecessary insofar as they seek to reserve their rights to modify the administrative record and request a jury trial, and **DIRECT** that, no later than December 6, 2021, the parties meet and confer in good faith pursuant to Local Rule 26(b) to attempt to resolve disputes concerning the plaintiffs' proposed discovery requests and, no later than December 13, 2021, file on the CM/ECF docket a joint status update or separate updates advising whether any disputes remain and, if so, identifying them and briefly describing the parties' positions regarding them. Following the filing of the parties' joint or separate status report(s), the Clerk's Office is **DIRECTED** to schedule a teleconference with the parties to resolve any remaining discovery disputes and establish remaining deadlines, including for the completion of discovery, the filing of any motion to modify the administrative record, amend the complaint, or request a jury trial, and the filing of motions for judgment on the record.

### *NOTICE*

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to any further appeal of this order.*

---

[3] The plaintiffs explain that, although they understand that jury trials are rarely granted in ERISA cases, they "believe that information may arise during discovery that could lead to additional counts against Defendants and the potential for the filing of an amended complaint[,]" as a result of which they seek to "preserve the request for a jury trial until it is determined whether discovery will be allowed[.]" Reply at 6.

Dated this 21st day of November, 2021.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge