UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MAINE

| | |
|---|---|
| Brian P. Leavitt and Amanda L. Riendeau, §<br>*Plaintiffs*, §<br>§<br>v.       §<br>§<br>Sonoco Health and Group Benefits Plan, §<br>Sonoco Products Company, and §<br>Metropolitan Life Insurance Company, §<br>*Defendants*. § | Civil Action No. 1:20-cv-00426-LEW |

**JOINT STATUS REPORT**

Per the Court's March 16, 2022 Order, defendant Metropolitan Life Insurance Company ("MetLife") submits this Joint Status Report on behalf of the parties to this action regarding: (a) the outstanding discovery dispute between MetLife and plaintiffs (and sets forth their respective positions as to the same); and (b) remaining deadlines in this matter.

**OUTSTANDING DISCOVERY ISSUES**

A.   <u>MetLife's Position Regarding Plaintiffs' Discovery Requests</u>

As previously observed by the Court in this matter, "[d]iscovery is the exception, rather than the rule, in an appeal of a plan administrator's denial of ERISA benefits," and, as such, "the party seeking discovery must offer … some very good reason to overcome the strong presumption that the record on review is limited to the record before the administrator." Memorandum Decision and Order on Plaintiffs' Motion for Discovery (ECF Doc. 35) ("Discovery Order") at 2. "Because full-blown discovery would reconfigure the record and distort judicial review, courts have permitted only modest, specifically targeted discovery" in ERISA benefit denial cases. *Id.*

It is MetLife's position, based on the pleadings, documents in the administrative record, and Sonoco Products Company's ("Sonoco") February 2022 answers to plaintiffs' interrogatories, that the following facts are undisputed and compel the conclusion that the discovery already obtained by plaintiffs from Sonoco on the premium payment issue is more than sufficient and the additional discovery sought from MetLife is both unnecessary and inappropriate.

1. Sonoco sponsors and maintains an employee benefit plan that makes certain life insurance coverages available to eligible employees via a group insurance policy issued by MetLife to Sonoco (the "Plan"). Administrative Record ("AR") 3-65. This includes "basic" and "supplemental" life insurance coverages. AR 23-24.

2. As the group policyholder, Sonoco remits the premiums for such coverages to MetLife. However, under the terms of the Plan, who actually funds the premium payable to MetLife depends on the coverage at issue. For example, basic life insurance is "noncontributory" meaning that Sonoco fully funds the premium for such coverage on behalf of Plan participants. AR 28. In contrast, supplemental life insurance is (by its very nature) "contributory" meaning that the Plan participant funds the premium for such coverage if elected. AR 28, 59. *See* Sonoco's Answer to Interrogatory No. 2 (Sonoco "does not pay supplemental life insurance ('SLI') premiums for employees. Employees who properly enroll in supplemental life insurance coverage are required to pay SLI premiums. During active employment, employees who properly enroll in SLI authorize [Sonoco] to deduct contributions for SLI premiums from their regular pay"); Discovery Order at 4. Regardless of how premiums are funded, they are remitted or paid by Sonoco or its designee to MetLife. In other words, no Plan participant remits or pays premiums directly to MetLife for his or her supplemental life insurance coverage.

   3. A Plan participant's insurance generally ends "for all coverages" when he or she "cease[s] to be Actively at Work." AR 33. A Plan participant ceases to be actively at work when he or she stops "performing all of the usual and customary duties of [his or her] job on a Full-Time basis." AR 27.

   4. However, as noted by the Court, the "Plan provides several options for the 'Continuation of Insurance with Premium Payment, including 'At the Policyholder's Option.' In the 'Policyholder's Option' subsection, the Plan states that '[t]he Policyholder' – Sonoco – 'has elected to continue insurance by paying premiums for employees who cease Active Work in an eligible class for' certain reasons, including those who 'cease Active Work due to injury or sickness, for a period in accordance with the Policyholder's general practice for an employee in Your job class[,] and those who 'cease Active Work in an eligible class due to any other Policyholder approved leave of absence, for a period in accordance with the Policyholder's general practice for an employee in Your job class.' Per the Plan, '[t]he Policyholder's general practice for employees in a job class determines which employees with the above types of absences are to be considered as still insured and for how long among persons in like situations." Discovery Order at 8-9.

   5. It is undisputed that: (a) the basic and supplemental life insurance coverages in place for Brian M. Leavitt (the "Decedent") under the Plan continued after he ceased to be actively at work for Sonoco in December 2014 under this "subsection," that his basic life insurance coverage continued until his January 2016 date of death, and that his supplemental life insurance *could have* continued until the date of his January 2016 death if *necessary premium payment had been made*; and (b) while the premium for the Decedent's noncontributory basic life insurance coverage continued to be paid to MetLife until his January 2016 death (and, therefore,

his beneficiaries received $64,000 in basic life insurance benefits from MetLife following his death), no premium was paid for his contributory supplemental life insurance coverage after June 2015.  Thus, discovery as to "Sonoco's general practices with respect to the continuation of supplemental life insurance benefits for the job classes at issue" (Discovery Order at 9), beyond how premiums for supplemental life insurance are funded in such circumstance (which already has been provided by Sonoco), is unnecessary because the Decedent's *eligibility* for coverage "Continuation of Insurance with Premium Payment – At the Policyholder's Option" provision is not disputed, and, in any event, not something to be sought from MetLife.

6. Rather, the issue in dispute as to premium payment appears to be whether in the "Continuation of Insurance with Premium Payment – At the Policyholder's Option" circumstance, "Sonoco would forward premiums to MetLife that include any required contribution by employees *or* … [itself] would pay the full cost of such premiums."  Discovery Order at 9.  According to Sonoco's discovery responses, nothing changes in terms of premium contributions where a Plan participant remains insured after ceasing active work pursuant to the "Continuation of Insurance with Premium Payment – At the Policyholder's Option" provision.  In other words, the Plan participant must continue to fund the premium Sonoco remits to MetLife for his or her supplemental life insurance coverage.  *See* Sonoco's Answer to Interrogatory No. 2 ("During a short term disability leave, employees receive short term disability payments instead of their regular pay.  [Sonoco] issues short term disability payments through its payroll system.  During a short term disability leave, [Sonoco] continues to deduct contributions for SLI premiums from the employee's short term disability payments.  During a long term disability leave, employees receive long term disability benefits from the long term disability insurer(s) and not from [Sonoco].  [Sonoco] does not issue long term disability payments through its

payroll system. *During a long term disability leave, employees are direct billed for SLI premiums by a third-party [not MetLife], who [Sonoco] retains to provide billing services under its benefit plans"*) (emphasis added); Sonoco's Answer to Interrogatory No. 8 ("[Sonoco] … does not pay supplemental life insurance ('SLI') premiums for employees. Employees who properly enroll in supplemental life insurance coverage are required to pay SLI premiums…. [F]rom January 1, 2014 to January 29, 2016, ninety (90) employees enrolled in supplemental life insurance … went on long term disability leave and [Sonoco] did not pay SLI premiums for any of those employees).

7. Sonoco's discovery responses are supported by documents in the record relied upon by MetLife. For example, on March 15, 2018, Sonoco advised MetLife that it allows Plan participants like the Decedent to continue their life insurance coverages after they cease to be actively at work, but also advised that such Plan participants are still required to contribute to the premium payment made by Sonoco for such coverages in the same way as when they were actively at work. AR 167. Sonoco further advised that while the Decedent had "paid for supplemental [life insurance coverage] through his short-term disability period ending 6/30/2015" (via a payroll deduction), no subsequent "payments through direct-bill" were collected from the Decedent and remitted to MetLife for supplemental life insurance coverage after June 2015. *Id.* In this regard, Sonoco explained that it had "mailed three monthly invoices" for the premium contribution due from the Decedent for his supplemental life insurance coverage "starting in June [2015], and after that [it] sent a cancellation letter [to the Decedent] on 8/31/2015" due to his non-payment. *Id. See* AR 180-84. These invoices, which are a part of the administrative record, informed the Decedent that his supplemental life insurance coverage would terminate if he did not make his required premium contribution. AR 180, 182. *See also*

AR 184 (October 3, 2015 letter to the Decedent notifying him that his coverages were terminated because the "required premium payment was not sent at all").  AR 184.

8.      Because no premium was paid to MetLife for the Decedent's supplemental life insurance coverage for any period after June 30, 2015 by *anyone*, his supplemental life insurance coverage ended long before his January 16, 2016 death.  *See* AR 31 (coverages end at the "end of the period for which the last premium has been paid").[1]

9.      Plaintiffs seem to assert that *Sonoco* was precluded from seeking any contribution from the Decedent for his supplemental life insurance coverage *after* he stopped working because the Plan document states that Sonoco "has elected to continue insurance by paying premiums for employees who cease Active Work in an eligible class …. due to injury or sickness …. [or a] Policyholder approved leave of absence" even though premiums for supplemental life insurance coverage were deducted from his short-term disability benefits for several months without objection.  AR 40.  In other words, plaintiffs seemingly assert that this language somehow negates the Plan's requirement (and Sonoco's practice) that participants contribute to the cost of their supplemental life insurance coverage.  From MetLife's perspective, for supplemental life insurance coverage to be effective under the "Continuation of Insurance with Premium Payment – At the Policyholder's Option" provision, premiums obviously must be remitted to MetLife, and it is undisputed that premiums for supplemental life insurance were not paid by or on the Decedent's behalf after June 2015.

10.     As such, discovery as to MetLife's "policies and procedures for determining whether insurance premiums were paid" for employees under the Plan and "similar insurance

---

[1] Per AON Hewitt, the premium for "[b]asic life was paid up through the date of death as it is an employer paid benefit."  AR 78.  This explains why basic life insurance benefits were paid by MetLife to plaintiffs following the Decedent's death.

policies issued by MetLife" (Proposed Interrogatory No. 2; Proposed Request for Production No. 2) and/or its efforts "to ascertain whether [the Decedent] qualified for continuation of supplemental life insurance benefits pursuant to the section titled 'AT THE POLICYHOLDER'S OPTION'" (Proposed Interrogatory No. 4; Proposed Document Request No. 3) is unnecessary and inappropriate because, as noted, it is undisputed that: (a) no premiums were paid to MetLife by anyone for the Decedent's supplemental life insurance coverage after June 2015; and (b) the Decedent was eligible for continued supplemental life insurance coverage at the time of his death *had premiums continued to be paid for such coverage after June 2015*. Moreover, MetLife has no "understanding" of Sonoco's general practices regarding premium payments for or by Plan participants like the Decedent (Proposed Interrogatory No. 3) beyond what Sonoco has explained in its discovery responses and as is set forth in documents contained in the administrative record upon which it relied. Finally, plaintiffs seemingly want MetLife to opine on whether the phrase "by paying premiums for employees" in the "Continuation of Insurance with Premium Payment – At the Policyholder's Option" section of the Plan document means that Sonoco must "pay only the employer's share of those premiums or both the employee's and employer's share" (Discovery Order at 9; Proposed Interrogatory No. 5). Even assuming this is a proper interrogatory directed to MetLife, MetLife's response would be that this phrase was not intended to change how premiums are funded per the terms of the Plan and the Policyholder's existing practice, but rather was intended simply to reflect that premiums had to be paid for coverages sought to be continued under this section.

11.  In short, plaintiffs have offered no compelling reason why the Court need look beyond the Administrative Record and Sonoco's discovery responses to adjudicate whether MetLife's determination that plaintiffs were not entitled to supplemental life insurance benefits

because the Decedent's supplemental life insurance coverage was not in force at the time of his death was arbitrary and capricious such that they should be given leave to seek irrelevant and unnecessary discovery from MetLife.

  B. <u>Plaintiffs' Position Regarding Discovery Requests To MetLife</u>

  12. Plaintiffs seek additional, limited, discovery from MetLife regarding its understanding and application of the ambiguous language in the Plan Document at the time of its denial.

  13. Plaintiffs' revised discovery consists of five (5) interrogatories and (3) document requests as follow:

<i>Interrogatories</i>

(1) Please state the full name, address, telephone number, and job position of all individuals who have participated in answering these interrogatories and responding to Requests for Production of Documents.

(2) Please describe Defendant Metropolitan Life Insurance Company's (hereinafter "MetLife") policies and procedures for determining whether insurance premiums were paid by Policyholders for employees who ceased active work due to illness, sickness or approved leaves of absence as described in the Plan Document submitted as part of the Administrative Record in this matter, and similar insurance policies issued by MetLife.

(3) Please describe MetLife's understanding, at the time of Brian M. Leavitt's claim, of Sonoco Product Company's general practice for continuing supplemental life insurance by paying premiums for employees who cease active work due to approved leaves of absence as described in the Plan Document filed as part of the Administrative Record in this matter.

(4) Please describe what efforts were undertaken by MetLife to ascertain whether Brian M. Leavitt qualified for continuation of supplemental life insurance benefits pursuant to the section titled "AT THE POLICYHOLDER'S OPTION" as described in the Plan Document submitted as part of the Administrative Record in this matter.

(5) Please state what it means in the Plan Document filed as part of the Administrative Record in this matter that the Policyholder elected to

continue insurance by paying premiums for employees who cease active work in an eligible class

### *Request for Production of Documents*

(1)   Any and all written statements or documents relied upon in answering Plaintiffs' interrogatories to Defendant MetLife.

(2)   Any and all documents evidencing Defendant MetLife's policies and procedures for determining whether insurance premiums were paid by Policyholders for employees who ceased active work due to illness, sickness or approved leaves of absence as described in the Plan Document submitted as part of the Administrative Record in this matter, and similar insurance policies.

(3)   Any and all correspondence or documents evidencing Defendant Sonoco Product Company's "election" to continue insurance by paying premiums for employees who cease active work in an eligible class as described in the Plan Document submitted as part of the Administrative Record in this matter.

14.   Plaintiffs request that the above-referenced discovery be answered by MetLife given the ambiguity in the policy language. Plaintiffs seek information regarding MetLife's understanding of Sonoco's general practices when it was evaluating plaintiffs' claim, what efforts MetLife undertook to determine those practices, as well as MetLife's interpretation of the Plan language at issue.

15.   The Administrative Record indicates that when MetLife made its claim determination it was relying on statements and information provided by Sonoco regarding the status of Decedent's employment at the time of his death. It appears from the Administrative Record that Sonoco and MetLife were operating under different definitions when interpreting the terms of the policy. For instance, in an email from Sonoco to MetLife on March 19, 2018, an employee at Sonoco stated that it was Sonoco's "understanding of the definition in the life certificate is [sic] that because he wasn't able to RTW [return-to-work] he would have been 'disabled.'" (*See* AR 166-67.) In another section of the Administrative Record, an attorney at the

law firm of Cozen O'Connor inquired whether MetLife was asking questions in March of 2018 that "should have been considered by MetLife during the original claim review." (AR 159-60.) In the same communication, the attorney asked: "is MetLife saying that employers have the option of adopting their own rules of eligibility?" (AR 160.)

16. Plaintiffs seek the additional discovery referenced above to determine whether MetLife's final administrative decision was arbitrary and capricious and whether it acted fairly in evaluating plaintiffs' claim.

C. <u>Sonoco Defendants' Position Regarding Discovery</u>

17. Defendants Sonoco Health and Group Benefits Plan and Sonoco Products Company ("Sonoco Defendants") state that Sonoco Products Company has responded to all discovery requests directed to it and that there are no pending discovery issues related to Sonoco Defendants.

**PROPOSED SCHEDULING ORDER**

<u>Deadline for Filing Motions to Modify the Administrative Record</u>: Any party seeking to modify the administrative record shall file a motion no later than May 2, 2022, with incorporated memorandum of law, not exceeding 10 pages in length, setting forth in the detail the modification(s) sought and the bases therefore. Any objection, with incorporated memorandum of law, shall be filed on or before 21 days after the initial motion is filed and shall not exceed 10 pages in length. Replies shall be filed by 14 days after the objection is filed and shall not exceed 7 pages in length. If the motion is opposed and the Court grants the relief sought, in whole or in part, a scheduling conference shall be held to establish a timetable for filing of motions for judgment on the record for judicial review.

<u>Deadline for Filing Motions for Judgment on the Record for Judicial Review</u>: Absent a motion to modify the record, on June 22, 2022, each party shall simultaneously file their

respective motions for judgment on the record for judicial review, with incorporated memoranda of law, not exceeding 30 pages in length, which shall include a brief recitation of facts, accompanied by record citations, upon which the moving party relies for the requested relief. Any objection, with incorporated memorandum of law, shall be filed on or before 30 days after the initial motion is filed and shall not exceed 15 pages in length.  Objections shall be confined to new matters raised in the opposing party's motion.  An objecting party shall identify any of the moving party's record citations to which the objecting party disagrees, setting forth the basis of such disagreement and what part of the record, if any, the Court should consider.  No reply memoranda shall be filed without prior permission of the Court.

Respectfully submitted,

METROPOLITAN LIFE INSURANCE COMPANY

By Its Attorneys,
SULLOWAY & HOLLIS, P.L.L.C.

DATED:  March 30, 2022  By:  /s/ William D. Pandolph, Esq.
William D. Pandolph, Esq. #003996
9 Capitol Street
Concord, NH 03301
(603) 223-2800
e-mail: wpandolph@sulloway.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 30, 2022.

DATED:  March 30, 2022  By:  /s/ William D. Pandolph, Esq.
William D. Pandolph, Esq.